Charles Liebnow, Defendant in Error, *vs.* The Wisconsin Lime and Cement Company, Plaintiff in Error.

*Opinion filed June 20, 1911—Rehearing denied October 6, 1911.*

1. Evidence—*what evidence incompetent in a negligence case.* In an action for an injury to the driver of a wagon caused by the hinged seat turning over as he was dismounting, evidence that another servant who had driven the same wagon had tied a piece of rope on the seat, at his foreman's suggestion, to keep the seat from being turned forward by his forgetfulness or mistake, as it had done on former occasions under circumstances different from those of the case at bar, is incompetent.

2. Master and servant—*master is not an insurer against accidents from appliances furnished.* The standard of duty of the master is to exercise ordinary care to provide appliances of reasonable safety for the use of the servant; but absolute security against accidents cannot be attained, and the master is not an insurer against them and is liable only for the consequences of his own negligence.

3. Same—*master is not bound to notify experienced servant of common and obvious conditions.* A company using wagons in its business is not bound to notify a driver that the driver's seat is hinged, so as to turn forward, and that it will turn forward if sufficient force is applied, where the driver is an adult of average intelligence and an experienced driver, and the wagon is of the type in common use for years in that locality, not differing in any way from the other wagons of its type nor requiring any minute or careful examination to disclose its construction and operation.

4. Same—*when the master is not liable for injury to driver of wagon.* Where the master furnishes to an adult and experienced driver a wagon with a hinged seat of a kind in common use by every one in that locality for years, it may assume that such servant can drive the wagon with safety, and is not liable for an injury to the driver caused by his act in holding onto the bow of the canopy top as he started to dismount, which caused the seat to turn forward, throwing him in front of the wagon, which ran over his ankle as the team started.

Writ of Error to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Willard M. McEwen, Judge, presiding.

F. J. CANTY, and J. C. M. CLOW, for plaintiff in error.

F. W. JAROS, and FRANCIS J. WOOLLEY, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Charles Liebnow, defendant in error, obtained a judgment in the superior court of Cook county against the Wisconsin Lime and Cement Company, plaintiff in error, for $2250 damages on account of injuries received by him while working for the plaintiff in error as a teamster, and the Branch Appellate Court for the First District affirmed the judgment. The record is in this court in return to a writ of *certiorari.*

The injuries resulted from the hinged driver's seat turning forward toward the horses while the plaintiff was dismounting from the wagon, and the charge of the declaration was that the defendant was guilty of negligence in providing the seat, which was alleged to have been improperly, insufficiently and insecurely fastened and in a dangerous condition.

The plaintiff was about forty-five years old and had been working as a teamster for four or five years. The defendant was engaged in the lime and cement business, and the plaintiff commenced work at half-past six o'clock in the morning of the day of the accident. He was given a wagon with a large box, three or four feet deep, on top of which were flaring sides or wings. At the front of the box there was a seat, about two and a half feet wide, for the driver, with a canopy top, and there was a foot-board on the outside of the box. There were two standards for the seat in the front of the box, to which wooden supports were framed, extending back in the box at right angles. On the tops of these horizontal pieces of wood there were similar pieces, and the two were fastened together at the front

with hinges. On the top of the upper pieces there was a leaf spring, on which the seat rested, and there were board sides, about six inches high, at the back and sides of the seat. The seat was hinged, so that it could be turned forward to get to the front of the box. Such seats were in common use, and it was the usual method of making wagons for hauling coal, lime and other materials of that kind. They had been in general use for wagons employed in hauling lime and in similar uses for at least ten years and were never made with any device to fasten or lock the seat. The seat was about eighteen inches above the top of the box and it was seven feet and six inches from the seat to the ground. There was a canopy top on the seat with three bows, the canopy being held up by the middle one of the three bows and the others attached to it about six inches above the seat. The top was adjustable, so that it could be turned down horizontally or at any angle, either forward or back, as the driver might choose. The wagons were not built with canopy tops but the defendant had a lot of them, which the men could put on the wagons in the summer time if they saw fit. The plaintiff hitched one of the defendant's teams to the wagon and drove to a freight car, where he climbed over the seat into the box and from the box into the car, and, with others, loaded the wagon with lime. The plaintiff then got back on the seat and drove about a mile to the place of delivery. He then went to the back end of the wagon and shoveled the lime out of the wagon box, after which he got out of the wagon and had his ticket signed, and then got back into the wagon and on the seat and drove back to defendant's office to get an order for his next load. It was then about eleven o'clock, and the plaintiff started to climb off the wagon to get his order. He testified at the trial that he was with one foot on the wheel and had stepped down another step and the horses gave a little jerk; that he had one foot on the double-tree and tried to step down another step and the top started to fall over and he

made a grab and grabbed the middle bow of the shade, and that when the horses made the jerk it started over right away, before he grabbed it. The accident happened on July 18, 1905, and he had made a written statement of the circumstances on September 5, 1905. In that statement he said that he grabbed hold of the top, swung to the wheel with one foot, and just as he was about to step to the ground the top and seat fell forward over the front of the wagon. There were other things in the statement which he did not remember, but he did remember making that statement at the time the writing was made. Although he remembered giving that account of the transaction he made no explanation of how it came to be made if not correct, and when his attention was called to it did not say that it was not accurate and true. A witness for the defendant testified that when the plaintiff got off the wagon he took hold of the canopy with his left hand and swung around to get off, and in that way he tipped the seat forward. The statement that the seat was caused to tip forward by a little jerk of the heavy freight wagon by the horses would be contrary to the operation of natural laws, as a slight jerking of the wagon would have a tendency to throw the canopy top back, if either way. Considering his whole testimony, the reasonable conclusion is that he got hold of the canopy top to sustain himself in swinging down from the front of the wagon and in that way brought the seat over forward. The team started forward and the plaintiff was crowded between the wagon and a car. He hung on to the wagon for about fifty feet, when he fell off and the wheels ran over his ankle. The plaintiff testified that he did not know the seat was a hinged seat; but seats of that kind had been in common use during all the time that he had been a teamster, and everything about the wagon and the seat was open, plain and visible to any person. There was evidence for the plaintiff that the bolt through the hinge was worn and not tight, so that the hinge would work

easier than if it had been tight and new, but that fact did not make the seat in any way unsafe or insecure, the only effect being that it would be easier to turn it over forward.

The plaintiff produced a witness who was permitted to testify, against the objection of the defendant, that he had driven this wagon previously; that he had been driving toward the sun and tipped the canopy forward so as to protect his face from the sun, and that while the canopy was in that position and he was shoveling lime off the wagon a gust of wind came up and tipped the top over toward the horses. The canopy was adjustable and the driver had turned it over in such a way that a gust of wind would catch it, and the conditions not being the same, the fact had no tendency to prove that the top was liable to tip over when the canopy was vertical. The same witness was also allowed to testify that in getting off the wagon he made a mistake and grabbed the canopy and pulled it forward but let go and shoved it back. Of course, the driver could turn the seat over forward since that was the purpose of the hinge, and drivers were in the habit of turning them forward to get to the front of the box or to keep them from getting wet when it rained. The same witness testified that he tied a piece of rope around the seat afterward at the suggestion of the foreman, but neither what he did as a protection against his forgetfulness or another mistake, nor the advice of the foreman, was competent evidence against the defendant. The court erred in ruling on the admission of evidence, and the rulings were prejudicial to defendant.

The defendant asked the court, at the close of the evidence, to direct a verdict of not guilty, which the court refused to do. The standard of duty of the employer is to exercise ordinary care to furnish appliances of reasonable safety for the employee, but absolute security against accidents cannot be attained and the employer is not an insurer against them. The defendant would be liable for the consequences of its own negligence but for nothing else, and

it furnished to the plaintiff a wagon with a seat of a kind which had been in common use in the same city for at least ten years, not only by people generally, which would include the careless and negligent, but by everyone, including the most careful and prudent. The defendant had a right to assume that a teamster of the age of the plaintiff and with his knowledge and experience would be able to handle the team and drive such a wagon with safety. Everything about the seat and the manner in which it was attached to the uprights, and the fact that it was a hinged seat, were as plain and obvious as anything could be, and the failure to inform an adult of average intelligence of such facts was not negligence. It did not require a minute inspection by the plaintiff to discover what he could not help seeing, and the argument that he was not required to inspect the hinges is without force, because they did not create any tendency of the seat to tip forward, which could only occur when some force was applied. It is argued, however, that the defendant was negligent in having a canopy top on the seat without a rope or strap around the seat to fasten it. The evidence shows that such seats are never made with any lock, fastening or device to prevent their being turned forward in use, and if necessary or advisable to tip the seat forward, the canopy could be adjusted by turning it backward, so that there would be no danger at all of its striking the horses or frightening them. It would be impossible for a heavy seat constructed as this one was, to turn over without the application of considerable external force. There was no evidence fairly tending to prove negligence on the part of the defendant, and the court erred in refusing to direct the verdict of not guilty.

The judgments of the Appellate Court and the superior court are reversed and the cause is remanded to the superior court.                    *Reversed and remanded.*